# EXHIBIT A

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

SABRINA AL-HASSAN, an individual,
YASMEEN SALAME, an individual,
YHESMEIN AL-HASSAN, an individual,
and ALIAH AL-HASSAN, an individual,

        Plaintiffs,

v.

AMERICAN AIRLINES, INC. a
Delaware Corporation,

        Defendant.

Case No. 25-_____NO

Hon.

---

COHEN, LERNER & RABINOVITZ, P.C.
By:   Steven Z. Cohen (P29344)
       Donna A. Heiser (P51281)
Attorneys for Plaintiffs
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067
(248) 691-2200 / (248) 691-2214
*eileen.dehring@cohenlerner.com*
*donna.heiser@cohenlerner.com*

---

*There is no civil action arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court nor has any such action been previously filed and dismissed after being assigned to a Judge.*

      */s/ Steven Z. Cohen*
      Steven Z. Cohen (P29344)

## COMPLAINT

NOW COME Plaintiffs, Sabrina Al-Hassan, Yasmeen Salame, Yhesmein Al-Hassan, and Aliah Al-Hassan, by and through their attorneys, COHEN, LERNER & RABINOVITZ, P.C., and for their Complaint against Defendant American Airlines, Inc. state as follows:

1. Plaintiff, Sabrina Al-Hassan, is a resident of the County of Wayne, State of Michigan.

2. Plaintiff, Yasmeen Salame, is a resident of the County of Wayne, State of Michigan.

3. Plaintiff, Yhesmein Al-Hassan, is a resident of the County of Wayne, State of Michigan.

4. Plaintiff, Sabrina Al-Hassan, is a resident of the County of Wayne, State of Michigan.

5. Each of the Plaintiffs are of Arabic descent and are Muslim.

6. Defendant, American Airlines, Inc., is a Delaware Corporation doing business in the County of Wayne, State of Michigan.

7. The amount in controversy herein exceeds Twenty-Five Thousand ($25,000.00) Dollars.

8. On May 1, 2023, Plaintiffs along with two infants, traveled on an American Airlines flight from Fort Myers, Florida with an end destination of Detroit, Michigan.

9. Plaintiffs' plane from Fort Meyers was delayed and late getting into its layover destination at Ronald Reagan Washington National Airport.

10. Plaintiffs were hurried by American Airlines representatives to the gate for the connecting flight on American Airlines to Detroit Metropolitan Airport.

11. While at the gate, Yhesmein Al-Hassan received a new ticket for boarding.

12. The remaining Plaintiffs, Sabrina Al-Hassan, Yasmeen Salame and Aliah Al-Hassan were all advised by the American Airlines' gate agent to use the boarding passes they received in Fort Meyers, get on the plane and use the seats they had been assigned when they originally left Fort Myers.

13. Apparently, there was a ticketing error as Plaintiffs all found there were people sitting in the seats they were assigned.

14. Sabrina Al-Hassan, Yasmeen Salame and Aliah Al-Hassan were all told by a male representative of American Airlines, who they believed was the gate agent, they could "sit anywhere" because the flight was not full.

15. Then Sabrina Al-Hassan, Yasmeen Salame and Aliah Al-Hassan were approached by a female American Airlines flight attendant who told them to "sit in your assigned seat."

16. Plaintiffs tried to explain to the female American Airlines flight attendant that other people were sitting in their seats.

17. Then, the flight attendant, once again, directed all four Plaintiffs to "go to your assigned seat."

18. The Plaintiffs again tried to explain people were in their assigned seats.

19. The flight attendant approached the Plaintiffs, shushed Sabrina Al-Hassan, pointed her finger near Sabrina's face and stated "get up out of the seat you're in if you want to get to Detroit."

20. Aliah Al-Hassan tried to show the flight attendant their boarding passes were for occupied seats.

21. The flight attendant then grabbed her iPad, roughly scrolled through it and questioned Aliah where they were on the flight roster.

22. The flight attendant then intoned, "I need you to go back to your seat and calm down."

23. Yet, the only person who was not calm was the flight attendant.

3

24. Aliah Al-Hassan asked again where they should sit because their seats were occupied.

25. At that point the flight attendant walked to the back of the plane and signaled to the Plaintiffs.

26. The flight attendant then made a male passenger move, because he was apparently in the wrong seat, and seated Aliah Al-Hassan and Sabrina Al-Hassan.

27. The flight attendant continually told Plaintiffs they were going to get kicked off and have to leave the plane.

28. The flight attendant seated Yhesmein Al-Hassan and Yasmeen Salame next to each other with the two infants.

29. However, the flight attendant did not provide Yhesmein Al-Hassan and Yasmeen Salame with seat belt extenders for the two infants.

30. The flight attendant was causing a commotion and people started recording her actions on their phones.

31. After all Plaintiffs and their infants were seated, the flight attendant made some general announcements.

32. The flight attendant then added "if you have an infant on your lap, you have to buckle or you will be asked to leave the plane."

33. This was a clear reference to Plaintiffs as they were the only passengers traveling with infants.

34. While this was occurring, Plaintiffs remained completely silent in their seats.

35. Moreover, the flight attendant's tone was hostile.

36. At that time, the gentleman, who Plaintiffs believed was an American Airlines gate agent told Plaintiffs: "I need all six of you to get off my aircraft or we'll call security. It is the flight attendant's plane"

37. When asked why he was making that directive, the gate agent responded, "I don't have to give you a reason, it's her plane and it is what she wants" gesturing toward the flight attendant.

38. While standing in front of her seat, Plaintiff Yasmeen Salame requested the names of the people from American Airlines involved, but they would not provide them.

39. Although the flight attendant had a uniform on, she wore no name tag and she specifically refused to give her name.

40. The gate agent refused to give Ms. Salame his name.

41. Ms. Salame asked the flight attendant to explain why they were being kicked off the plane and again requested their names.

42. When Ms. Salame indicated she was going to file a complaint, the gate agent swore at her using the "F" word and told her to get off the plane.

43. The gate agent also aggressively pushed Ms. Salame with his left hand and shoved her back.

44. In response Ms. Salame stated: "Don't put your hands on me."

45. Plaintiffs were the only people on the plane of Arabic descent.

46. The Plaintiffs proceeded to leave the plane.

47. Sabrina Al-Hassan, who was wearing a head scarf as is generally worn in the Islamic faith, asked the pilot who was standing just outside of the cockpit: "I don't understand why we are being treated this way?"

48. The pilot responded: "Just get off of my plane."

49. As Yasmeen Salame and Aliah Al-Hassan proceeded to the front of the plane Yasmeen Salame asked the pilot for the names of the flight attendant and gate agent and also asked why they were being kicked off the plane.

50. The pilot responded that he was not authorized to give the names. The pilot also stated if we feel unsafe at any point in time since 9/11 we have the right to kick people off the plane.

51. When Plaintiffs entered the walkway there were multiple people coming toward them including a man in a suit, a woman in professional attire and security or police personnel.

52. The woman identified herself as Terri and indicated she was a manager for American Airlines.

53. Sabrina Al-Hassan cried as she told Terri what had happened.

54. Although Terri was kind to the Plaintiffs, she indicated to them that "[e]ver since 9/11 our pilots have the right to kick people off of the plane."

## COUNT I
## DISCRIMINATION UNDER THE ELLIOTT-LARSEN CIVIL RIGHTS ACT

55. Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as though more fully stated herein, paragraph by paragraph and word for word.

56. The Elliott-Larsen Civil Rights Act seeks to eliminate the effects of offensive or demeaning stereotypes, prejudices and biases. *Zanni v Medaphis Physician Services Corp*, 240 Mich App 472 (2000).

57. The Elliot-Larsen Civil Rights Act specifically provides:

6

> Except where permitted by law, a person shall not . . . deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status. MCL § 37.2302(a).

58. The Elliott-Larsen Civil Rights Act defines "place of public accommodation" as:

> [A] business, or an educational, refreshment, entertainment, recreation, health, or transportation facility, or institution of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages, or accommodations are extended, offered, sold, or otherwise made available to the public. MCL § 37.2301(a)

59. Plaintiffs were discriminated against by Defendant's agents due to their race and/or religion.

60. The actions of Defendant's agents constitute violations of the Elliott-Larsen Civil Rights Act as against Plaintiffs.

61. As a direct and proximate result of the violations of the Elliott-Larsen Civil Rights Act by the Defendant, each of the Plaintiffs have suffered damages which include, but are not limited to, mental anguish and emotional distress, lost wages and other associated damages.

WHEREFORE, Plaintiffs Sabrina Al-Hassan, Yasmeen Salame, Yhesmein Al-Hassan, and Aliah Al-Hassan each respectfully request this Honorable Court enter judgment against Defendant American Airlines, Inc. in whatsoever amount in excess of Twenty-Five Thousand ($25,000.00) Dollars to which they may each be found entitled, together with costs, interest and attorney fees and further award such relief as is just and proper in the premises.

## COUNT II
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

62. Plaintiffs hereby incorporate and reallege by reference each and every allegation contained in the preceding paragraphs as though more fully stated herein, paragraph by paragraph and word for word.

63. Plaintiffs were subjected to extreme and outrageous conduct by Defendant through its agents and/or employees.

64. Defendant's conduct was so outrageous in character and extreme in degree, it went beyond all possible bounds of decency, and should be regarded as atrocious, and utterly intolerable in a civilized community.

65. Defendant's conduct was intentional or reckless in character.

66. As a direct and proximate result of Defendant's outrageous conduct, each of the Plaintiffs have suffered damages which include, but are not limited to, mental anguish and severe emotional distress.

WHEREFORE, Plaintiffs Sabrina Al-Hassan, Yasmeen Salame, Yhesmein Al-Hassan, and Aliah Al-Hassan each respectfully request this Honorable Court enter judgment against Defendant American Airlines, Inc. in whatsoever amount in excess of Twenty-Five Thousand ($25,000.00) Dollars to which they each may be found entitled, together with costs, interest and attorney fees and further award such relief as is just and proper in the premises.

COHEN, LERNER & RABINOVITZ, P.C.

/s/ Steven Z. Cohen
By:   Steven Z. Cohen (P29344)
      Donna A. Heiser (P51281)
Attorneys for Plaintiffs
26862 Woodward Avenue, Suite 200
Royal Oak, MI 48067
(248) 691-2200 / (248) 691-2214
*eileen.dehring@cohenlerner.com*
*donna.heiser@cohenlerner.com*

Dated: April 1, 2025

8